Lulea v. Barr

BIA
Loprest, IJ
A097 981 538

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of February, two thousand twenty.

PRESENT:
> JOHN M. WALKER, JR.,
> BARRINGTON D. PARKER,
> SUSAN L. CARNEY,
> *Circuit Judges.*

_____

PUIU VALI LULEA,
> *Petitioner,*

v.                                                    No. 19-2

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:              MICHAEL P. DIRAIMONDO, DiRaimondo & Masi, PC, Bohemia, NY.

FOR RESPONDENT:              ANDREW N. O'MALLEY, Senior Litigation Counsel (Joseph Hunt, Assistant Attorney General; Cindy S. Ferrier, Assistant Director, *on the brief*), *for* the Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner Puiu Vali Lulea, a native and citizen of Romania, seeks review of a decision of the BIA affirming a decision of an Immigration Judge ("IJ") denying Lulea's application for cancellation of removal, relief available to certain nonpermanent residents. *In re Puiu Vali Lulea,* No. A 097 981 538 (B.I.A. Dec. 7, 2018), *aff'g* No. A 097 981 538 (Immig. Ct. N.Y.C. Oct. 31, 2017). We assume the parties' familiarity with the underlying facts and procedural history in this case. Under the circumstances of this case, we have reviewed the IJ's decision as modified by the BIA. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005).

At the outset, Lulea claims that the IJ who issued the removal order in 2017 lacked jurisdiction because a different IJ presided over the hearings, which were conducted in 2013. No authority establishes that an alien is entitled to have a particular IJ render a decision in a matter. Here, the second IJ familiarized himself with the record before issuing a decision. *See* 8 C.F.R. § 1208.2(b) (notice to appear vests jurisdiction in immigration court and "immigration judges"). The regulations do not specify that a notice to appear vests jurisdiction in proceedings before

2

a particular judge. Accordingly, the fact that a second IJ issued the decision does not invalidate the resulting order or provide a basis for remand.

Other considerations, however, require us to remand the cause for further consideration of Lulea's eligibility for cancellation of removal. Lulea was served with a Notice to Appear ("NTA") in May 2007 for overstaying his student visa. He then sought cancellation of removal. A non-resident alien like Lulea may establish eligibility for cancellation of removal if, among other requirements, he can demonstrate that he has been "physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b)(1). Although Lulea appears to have been physically present in this country after 2007, the statutory "stop-time" rule provides that "any period of . . . continuous physical presence in the United States shall be deemed to end . . . when the alien is served with a notice to appear." *Id.* § 1229b(d)(1)(A). In addition, the applicable statute directs that "[a]n alien shall be considered to have failed to maintain continuous physical presence in the United States . . . if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days." *Id.* § 1229b(d)(2). Thus, to be eligible for cancellation of removal, Lulea had to

3

show he was continuously physically present in the United States from May 1997 to May 2007.

Although our jurisdiction to review the denial of cancellation is limited, *see* 8 U.S.C. § 1252(a)(2)(B)(i), (D), we have jurisdiction to review the agency's "nondiscretionary, or purely legal, decisions regarding an alien's eligibility" for that relief. *Sepulveda v. Gonzales*, 407 F.3d 59, 63 (2d Cir. 2005). The applicable standards of review are well established. *See Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009) (reviewing factual findings for substantial evidence and questions of law and application of law to fact de novo).

The agency found Lulea credible but concluded that he was ineligible for cancellation of removal because, in the agency's view, he did not show by a preponderance of the evidence that the extensive time he spent working on a Florida-based Princess Cruises ship and the 54 days he spent in Romania between 1997 and 2007 did not total more than 180 days outside of the United States. The fact that Lulea has not left the country since May 2000 is not in dispute, nor is the fact that he spent 54 days in Romania between 1997 and 2000. The only remaining question is whether, from 1997 through 2000, Lulea can be considered to have departed the United States while working on the Princess Cruises ships. We conclude that we cannot review the agency's determination without its

4

explanation as to what, in its view, constitutes a departure from the United States where, as here, the applicant credibly testified that most, if not all, of his time working on the U.S-based line was spent on routes between U.S. ports.

The agency found credible Lulea's testimony that he worked on ships that traveled between Florida and Alaska, and that he passed through the Panama Canal and made stops in California and Washington State. The agency also found credible Lulea's testimony that, during the times between 1997 to 2000 that he was not on the Alaska cruises, he worked on other cruises that took place in and around Florida and cruises from Florida to Puerto Rico. It also credited Lulea's testimony that, when he had time off and disembarked, he stayed in Florida for at least several months each time, living in an apartment he rented. Although the documents do not indicate the routes traveled, he provided documentary evidence of his employment on ships during these voyages. Lulea also testified that he did not recall ever docking in a non-U.S. port, although he knew the cruise line had routes that stopped at non-U.S. ports.

The agency found that Lulea did not carry his burden of showing the absence of any aggregate break in his continuous presence in the United States during the years he worked on cruise ships. It considered "passage through international waters to be

5

a departure from the United States." Special App'x at 5. The agency cited no legal authority for the proposition that traveling on a ship voyaging between U.S. ports constitutes a statutory "departure" from the United States whenever the ship crosses outside of U.S. territorial waters, however briefly. Lulea argues that his trips between U.S. ports did not constitute such "departures." This interpretive task presents a question of law for the agency to address in the first instance.

In its decision, the agency also relied on its view that "the record is inconclusive as to the route this cruise ship traveled and the port cities this cruise ship visited." Special App'x at 5. Lulea's inability to provide the details of precise locations and specific times during which each voyage occurred in the late 1990s may not necessarily preclude him from demonstrating continuous physical presence. We agree with the Seventh Circuit that "[p]erfect recollection isn't part of the burden of proving continuous residence . . . . A witness's testimony may reveal a bad memory without necessarily vitiating his testimony and so preventing him from carrying his burden of proof." *Lopez-Esparza v. Holder*, 770 F.3d 606, 609–10 (7th Cir. 2014).

We therefore remand the cause to allow the agency to clarify what constitutes a statutory departure from the United States under these circumstances. Although the IJ provided an alternative basis

6

for its denial of relief to Lulea, the BIA did not reach that determination. Accordingly, that alternative basis—whether the years Lulea spent as a "crewman" can be considered in determining physical presence—is not currently before us.

For the foregoing reasons, the petition for review is GRANTED, the BIA's decision is VACATED, and the cause is REMANDED for further proceedings consistent with this Order.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

7